IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

02 JUN 21 PM 4: 46

GARY D. McFARLAND
CLERK

| | |
|---|---|
| BARBARA BRUNDO, Ed.D ) <br> 9827 BLOOMFIELD DRIVE ) <br> OMAHA, NE 68114 ) <br> ) <br> PLAINTIFF ) <br> ) <br> Vs. ) <br> ) <br> BRIGHT HORIZONS FAMILY SOLUTIONS, ) <br> MS. TAMMY ENGEBRETSON, ) <br> MS. ERIN SALTON, ) <br> BRIGHT HORIZONS/ ) <br> OMAHA 2000 EARLY CHILDHOOD EDUCATION CENTER ) <br> @ THE COLLEGE OF ST. MARY'S ) <br> 6908 MERCY ROAD ) <br> OMAHA, NE 68124 ) <br> ) <br> ) <br> ) <br> ) <br> DEFENDENTS ) | Case No. 02CV299 <br><br> COMPLAINT |

In accordance with Sections 48-1004, 48-1005 of the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age (LB 1357, 1972. Amended by LB 265, 1973; LB 162, 1977; LB 424, 1983; LB 626, 1983; LB 121, 1993). Age Discrimination in Employment Act of 1967, as Amended and Sections 48-1104, 48-1114 and Section 48-1119 and others of the Nebraska Fair Employment Practice Act and Title VII of the Civil Rights Act of 1964 as Amended, the Plaintiff states the following:

A RESPONDENT copy of a the Equal Employment Opportunity Commission Dismissal and Notice of Rights to Barbara Brundo for Charge Number 32EA10780 was copied to

Executive Officer of OMAHA 2000 - BRIGHT HORIZONS, signed by RONALD HOUSER for Francisco J. Flores Jr., Director and stamped with the date March 21, 2002. A copy of this document is attached to this pleading. This was postmarked in Denver on March 22, 2002 and delivered to the Plaintiff via US Postal service on March 25, 2002.

This is a nineteen- (19) page document with additional exhibits in an addendum.

### I. Parties

**A.**  **The PLAINTIFF** is Dr. Barbara Brundo, (Doctor of Education) 9827 Bloomfield Drive, Omaha Nebraska, 68114; Telephone number 402 393 1310; Fax number 402 393 5546.

**B.**  **The DEFENDANTS** are Bright Horizons Family Solutions, Executive Officer, and Omaha 2000/Bright Horizons hiring committee Tammy Engebretson and Erin Salton and perhaps others at the Omaha 2000 Early Childhood Education Center @ the College of Saint Mary's, 6908 Mercy Road, Omaha, NE 68124. Tammy Engebretson was the Director at the time of hiring and Erin Salton joined her in interviewing. Erin Salton is now the Director of the Omaha 2000/Bright Horizons (June 20, 2002).

### II. Statement of the Claim.

Defendant failed to comply with Section 48-1004 of the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age and the Age Discrimination in Employment Act of 1967, as Amended and Sections 48-1104, 48-1114(2) of Nebraska Fair Employment Act and Title VII of the Civil Rights Act of 1964 as Amended.

**Specifically:**

A. Plaintiff is between the ages of 40 and 70 years. Defendant failed to evidence the age of the unnamed person who was the successful candidate. On June 20, 2002, Erin Salton, Director stated that the person hired was no longer there. There was one opening in one of three infant rooms at the time of the hiring. Currently the six caregivers working in the three infant rooms have one to six years of experience.

B. Plaintiff is more qualified than the person hired based on educational background, diversity of educational experiences including years of infant care as a babysitter beginning at eleven or twelve years of age, as a parent and as a grandparent doing infant day care in her home. PLAINTIFF possesses a doctorate in education in Curriculum and Instruction with an emphasis in early childhood education. PLAINTIFF has experience in the teaching of reading methods, children's literature and supervision of student teachers at the university level in addition to having served as a principal of a PRE-K- 8 parochial school. The doctoral dissertation research of the PLAINTIFF was completed at the School for Early Childhood Education, University of Southern California Preschool in conjunction with the Annenberg School of Communication at the University of Southern California.

C. Bright Horizons continues to advertise positions open in the local *Omaha World Herald* and on their Internet site.

D. **The Plaintiff has membership in a second protected class**: Nebraska Fair Employment Act Section 48-1114. Opposition to unlawful practice; participation in

investigation; discrimination prohibited. It shall be unlawful employment practice for an employer to discriminate against any of his or her employees or <u>applicants for employment</u>, for an employment agency to discriminate against any member thereof or applicant for membership, because he or she (1) has opposed any practice made an unlawful employment practice by the Nebraska Fair Employment Practice Act, (2) <u>has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the act</u>, or (3) has opposed any practice or refused to carry out any action unlawful under the laws of the United States or this state.

1. The *World Herald* on April 28, 2002 stated the following, which indicates positions remain open:

> Child Care
> **Omaha 2000**
> an Early Childhood
> Education Center managed
> by Bright Horizons Family
> Solutions is seeking
> Enthusiastic teachers for
> Our NAEYC accredited child
> care program. You will
> enjoy outstanding support,
> training, a competitive
> salary and excellent
> benefits. We are currently
> taking applications for
> full-time, part-time, and
> subbing hours. Degree
> preferred, but will consider
> all qualified candidates.
> **Apply at 6908 Mercy Road
> Or call 390-2028.**

2. On October 3, 2000, Plaintiff applied for an infant care teacher position at Omaha 2000 - Bright Horizons. A resume was provided for Tammy Engebretson. (Exhibit 15a)

3. On October 3, 2000, Plaintiff completed the Application Form for Omaha 2000/Bright Horizons. (Exhibit 15b) References were also provided.

4. On October 4, 2000 an interview took place with Tammy Engebretson and Erin Salton each asking several questions. [During an NEOC meeting, investigator Kitty Amaya asked if PLAINTIFF had a tour and if there was a questionnaire as part of the interview. PLAINTIFF was shown an Infant Room where she was told she would be working if she received the position. There was no questionnaire completed as part of the interview.]

5. On October 6th Tammy Engebretson, the Director, called the PLAINTIFF and stated that she had "hired person with more infant experience." PLAINTIFF was told to apply at First National Bank for a position that would be open in the future. The successful candidate for the Infant Room (0-6 months) was possibly a person named Erin. The NEOC failed to name the person hired. Kitty Amaya, Investigator II, referred to Employee A and Employee B.

On June 13, 2001, Plaintiff completed the Nebraska Equal Opportunity Commission Information Sheet - Intake for filing a Discrimination Charge with the NEOC. (Exhibit 2A) On June 25, 2001 an inquiry was faxed to the NEOC office in Omaha in regards to the progress on the three charges reported on Intake Sheets on June 13th.

On June 28, 2001 Plaintiff was sent a letter "On behalf of the Commission" from Jeff Protextor, EOC Investigator stating that Omaha 2000/Bright Horizons, etc. charges were prepared for signing.

On July 10, 2001, the Charge of Discrimination for OMAHA, 2000 - BRIGHT HORIZONS was signed by the Plaintiff.

Kitty Amaya, EOC Investigator II, was assigned the case and met with the COMPLAINANT on October 18, 2001. The NEOC letter of October 9, 2001 was addressed to the PLAINTIFF at 9897 Bloomfield Drive rather than 9827 Bloomfield Drive and delivered to me by a neighbor after the postal carrier delivered it to his address.

*Insert October 25, 2001 MEMO:*

**DATE:** October 25, 2001

**TO:** Kitty A. Amaya
EOC Investigator II

**FROM: Barbara Brundo, Ed.D.**

**RE:** Omaha 2000-Bright Horizons Family Solutions
NEB 2-01/02-7-30420R and 30421-R

On Thursday, October 18, 2001, Ms. Kitty A. Amaya and Dr. Barbara Brundo (Doctor of Education) met for the first meeting as scheduled by telephone. The first meeting was set for Tuesday, October 16th however Kitty Amaya called Complainant to reschedule due to her (Kitty's) need to complete a work-related deadline. A letter written and mailed on October 9, 2001 and received by the Complainant on October 12, 2001 stated a tentative meeting was scheduled for October 9th at 1:00 PM.

During the rebuttal meeting, Kitty Amaya asked how the Complainant learned about the position. Complainant responded that her son-in-law said that the day care centered really needed someone and suggested that Complainant apply. Complainant was currently doing infant care in her own home and the infant cared for early on the resume was now at the Omaha 2000.

Complainant recalls that she has reviewed position announcements in the World Herald in the past and since this incident also. Copy would be available through library research.

Written Application was made on October 3, 2000.

Complainant recalls that interview was scheduled for October 6th and then rescheduled for October 4, 2000.

Investigator asked if Complainant thought the interviewers knew of the previous charge at the time of the interview. Complainant answered that she did not think so. The interview took place on October 4th, 2001 with Tammy Engebretson and Erin Salton (verify Erin's last name please).

The Complainant does not recall an interviewing instrument or questionnaire; each interviewer asked several questions. The interview was held in the evening at 6:15 PM immediately after a parent meeting was ending. The interview did last approximately an hour. It was very pleasant. It opened with an introduction (Tammy Engebreton) to the Bright Horizon history and development at that site. The potential of the position including teaching early childhood education classes at the College of St. Mary's was discussed. Complainant believes that College of St. Mary's donated the land for the Omaha 2000 facility. Tammy stated that the details were not yet worked out but it was an opportunity with the position. That was very agreeable to the Complainant having been an adjunct professor at Creighton University Department of Education previously.

There was no tour of the school however they were able to show the room that Complainant would be assigned if given the position. Complainant was given a Teacher Job Description.

The interview than concluded and each thanked the Complainant. It was a very positive interaction.

On October 6th at 2:05 PM Omaha 2000 (390-2028) called Complainant at her home and gave a message to her personally. Tammy Engelbretson said she "hired person with more infant experience." She further suggested that Complainant should apply at First National Bank for a Programs Coordinator job. Complainant was shocked by the hiring refusal.

After reflecting on the refusal, the Complainant called Omaha 2000 back and asked for Tammy, she was not available; so Complainant asked two questions that related to the interview questions. Does Omaha 2000 have a policy on "crying self to sleep"? Does Omaha 2000 have a policy on "swing use for infants"? The answer given to Complainant was "No."

During the rebuttal conference, Complainant found it very difficult to ascertain the qualifications of the candidates. Complainant understood that an earlier applicant was hired on September 25 or 28th. She was unable to take the job because of distance.

Then the Complainant was interviewed.

The successful candidate (Employee A) possessed an Associate degree in Early Childhood. Her "infant experience" included thirteen months with a two-month-old child until 15 months. She was part of a two-teacher team of eight children. She worked in a group childcare center setting. Her total work experience was four and one-half to five and one-half years.

Resume from 1991-2000 of the successful candidate:
1) Offutt as an assistant toddler teacher for 1 year
2) Air Force Child Care Center less than on year
3) Air Force preschool toddler with 7-10 children
4) Head Start Teacher for 3-4 year olds for 2 years.
5) Has children of her own from preschool to 7 years of age.
7) Nanny for two children for one and one-half years
8) Teacher in Columbus, Ohio at Riverside Methodist; 6 weeks to 18 months special needs infants.

Kitty Amaya, NEOC Investigator II, asked about how we could resolve this; she was already aware that Complainant was receiving $150 as week for infant care in her home.

There was also discussion regarding College of St. Mary's and knowledge of previous charge. The charge was printed in the Christ the King Catholic Church bulletin on April 5, 1998. The pastor of Christ the King from June 1998 until June 2001 was Rev. Thomas Ward; his sister is a Mercy nun. Mercy Sisters own the College of St. Mary's. Sally Juliano the Christ the King School library assistant has a sister who also is a Mercy nun. Sally Juliano is well aware of the happenings in regards to this charge. The Mercy nuns also worked for Complainant as School Counselors (Sr. Kay O'Brien, Sr. Monica and Sr. Elaine) when Complainant was principal of Christ the King. Sr. Marian Camel, former principal of St. Joan of Arc, also a Mercy nun told Complainant to retire when Complainant asked for a character reference in November 2000.

Also Complainant took a group of eighth graders and their parents to Washington DC; the group included Kathy Coffey Royce and her daughter. Kathy Royce works for Blue Cross/Blue Shield and her sister is a Mercy nun and Complainant believes head of Mercy Care Center, as the picture of (Sr.) Carolyn Coffey is in the entrance of the facility. Dr. Royce husband of Kathy Coffey Royce was the chairman of the computer committee and then Board member at Christ the King Catholic School when the Complainant was principal. The computer acquisition issue was major. Complainant had a generous grant-in-kind from Apple Computer Company and requested permission form the Board of Education to accept it. The Board of Education denied that request and placed IBM computers in the facility with a $100,000 price tag.

Also a relative of mine was living at Mercy Care Center which is operated by the Mercy Sisters. There are related financial issues, which Complainant does NOT have the authority to resolve since her death, and was unable to resolve during her life. Complainant discussed the quality of care and billing procedures with her as she had a father in need of long term care. Complainant did not recall where he was placed. This same Christ the King former secretary of mine and current Library Assistant at CTK (above) has a son who is the procurement and distribution manage for Alegent Health and his wife, her daughter-in-law who is a patient services coordinator, registered dietitian for Alegent Health. Mrs. Sally Juliano's sister is a Mercy nun.

In conclusion, Complainant does not know why she was not hired except for the fact that everyone knows that complaints were filed by Complainant, however she does know that it was improper and illegal because she was the more qualified candidate and it the law to report concerns regarding Medicare, patient care, billing inaccuracies, etc. and therefore Complainant is a protected entity. The position would have been very meaningful.

Complainant believes that the Complainant Witness List should include Tammy Engebreton and Erin Salton and all persons that they contacted regarding the character references of the Complainant.

> (Note: An application for employment with a <u>sealed record</u> on file with the commissioner of probation may answer "no record" with respect to an inquiry herein relative to prior arrests, criminal court appearances, convictions with respect to any inquiry relative to the same for all of delinquency or as a child in need of services which did not result in a complaint transferred to the superior court for criminal prosecution.)

Further a review of the application form makes one wonder why a person on probation can be hired but a person who reports inaccuracies and/or wrongful behavior is blocked from employment.

The conference was audiotaped for all or the most parts. Kitty Amaya could be more specific about the use of the tape-recorded. Thank you.

*End of Insert (October 25, 2001 MEMO).*

On November 8, 2001 the Nearing Completion Form and the Complainant Witness List were sent with a request from Kitty Amaya for a signing. "No further meetings are required for the investigation in regard to the above referenced case." (Omaha 2000-Bright Horizons)

On November 23, 2001 a **very important letter** was sent to Kitty A. Amaya (Exhibit 9)

*Insert November 23, 2001 letter:*

November 23, 2001

Ms. Kitty A. Amaya
EOC Investigator II
Nebraska Equal Opportunity Commission
1313 Farnam on-the-Mall
Omaha, Nebraska 68102-1836

**RE: Bright Horizons Family Solutions (NEB 2-01/02-7-30420 & NEB 30421-R)
EEOC 32E A1 0780**

Dear Ms. Amaya,

Thank you for your letter of November 8th, 2001. I am returning (enclosed yellow copies) the Nearing Completion Notice and the Complainant's Witness List which you included for Bright Horizons Family Solutions (NEB 2-01/02-7-30420 and NEB 30421-R).

I would like to note that I did not include in my **October 25, 2001** memo to you, my concerns on the initial Omaha 2000 charge that I signed. One was notarized in the NEOC office and another arrived in the mail with the State and Federal numbers assigned to it. Copies of these are also part of the communication as Item A, Item B and Item C.

> **Notary public**: *A public officer whose function it is to administer oaths; to attest and certify, by his hand and official seal. Certain classes of documents, in order to give them credit and authenticity in Foreign jurisdictions; to take acknowledgments of deeds and other conveyances, and certify the same; and to perform certain official acts, chiefly in commercial matters, such as protesting of notes and bills, the noting of foreign drafts, and marine protests in cases of loss or damage. One who is authorized by the state or federal government to administer oaths, and to attest to the authenticity of signatures.* (Black's Law Dictionary p. 1060)

While I believe that the correct causes of discrimination are based on Age and Retaliation, the form should not have been altered after the paper was signed by the Complainant and stamped by the General Notary of the State of Nebraska. While the paper needed to be corrected, the form should have been corrected with the error or change so noted. This did not happen in the instance of July 10, 2001 as the copy evidence. I say this to protect both the NEOC and the Complainant.

Also the "Subscribed and sworn to before me this date (Day, month, and year)" is crucial to the procedures and court determinations. If one uses July 10th, 2001 rather October 7th, 2001 for processing the papers it could have a potentially different outcome based on the date of court filing. This can have serious negative consequences for the Complainant if he/she incorrectly uses the later date for counting and is cited for such or it can be very advantageous to one who uses the later date to earn rights in the courts. It can also effect the credibility of the Nebraska Equal Opportunity Commission office; please refer to the EEOC Form 131-A (Rev. 06/92) which was enclosed with my July 23rd letter from the NEOC and is highlighted to indicate the problem.

Again my concern about calendar issues is more than for counting. I was told by counsel (At-arms-length) that I needed to continue to seek employment during the duration of the investigation. Employers do not look favorably about employees who need to be released from work so being able to have the charge signed and mailed in to the office is surely of great help to many. It would also help if the Commission would publish a calendar of days of operation. One should be able to follow the law if there is one.

Further the space for the NOTARY stamp is too small or it is unclear where it is to be placed as the form states DO NOT WRITE IN THIS SPACE yet indicates the Charging Party is to place a signature with a date. The Complainant needs to have confidence that the form will be correctly completed so as to not experience anxiety about the success of the processing of the charge. This is not the only instant in which the Complainant had difficulties regarding notarizations; three complaints were sent to the State Department of Education and different persons completed all three in three different ways. The only thing that I was sure of was that it was my intention to tell the truth and meet the requirement of the law.

Finally, I believe that this particular situation was more damaging than some of the others to the Complainant. The Complainant's family was seriously burdened and continues to be so.

In response to your letter, yes, I would like to be notified of the Commission meeting if my case is on the agenda. I was unable to attend one meeting due to the death of an aunt whose funeral was August 17, 2001. I believe that I received a notice for that meeting which was dated August 15, 2001. I will try to attend however I do day care and need to make arrangements with others. Fridays are more workable for me.

Again, I appreciate your assistance and I am sorry for the delay in returning these papers as you requested. Thank you.

Sincerely,


Barbara Brundo, Ed.D.

Enclosures:    Complainant's Witness List
Nearing Completion Form
Charge of Discrimination Signed by Complainant July 10, 2001
Charge of Discrimination Altered and Received by Complainant July 23, 2001
EEOC Form 131-A (Rev. 06/92)

*End of Insert (November 23, 2002 Letter):*

On January 11, 2002, a letter was sent to PLAINTIFF that the case was scheduled for the agenda of the Commission meeting on January 18, 2002. The PLAINTIFF attended that meeting and the agenda is part of this pleading. (Exhibit 11)

On January 18, 2002, an Administrative Closure was sent to the PLAINTIFF signed by Alfonza Whitaker of *no reasonable cause* for RETALIATION. It was postmarked January 25, 2002 and follows:

> **No Reasonable Cause**: Retaliation (failure to hire)
>
> The evidence demonstrates that the Respondent had a business necessity to require that the successful candidate for the teacher position have had experience in a multiple child daycare setting. Although the evidence suggests that the Respondent was aware of the Complainant's issues with College of St. Mary's; evidence showed that the successful candidate met that requirement more closely than that of Complainant. The evidence shows that the Respondent offered to Complainant future employment opportunities.

On January 18, 2002, an Administrative Closure was sent to the Plaintiff signed by Lynne Freidewald of *no reasonable cause* for AGE. It was postmarked January 25, 2002 and follows:

> **No Reasonable Cause**: Age (failure to hire)
>
> The Respondent had a business necessity for requiring the successful candidate to have experience in working with infants. The successful candidate met that requirement more closely than the Complainant. The Respondent employs teachers in the Complainant's protected class, and the Respondent offered to Complainant future employment opportunities.

PLAINTIFF does not believe that age discrimination can be determined without knowledge of the age of the successful candidate. Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age. **Section 48-1007**. ..."The commission may seek judicial enforcement through the office of the Attorney General to require the answering of

interrogatories and to gain access to evidence or records relevant to the charge under investigation. (Pg. 4)

On February 7, 2002 a letter was sent to U.S. Equal Employment Opportunity Commission (Exhibit 14)

*Insert February 7, 2002 letter:*

February 7, 2002

U.S. Equal Employment Opportunity Commission
EEOC Denver District Office
303 East 17th Avenue, Suite 510
Denver, Colorado 80203-9634

### RE: OMAHA 2000/BRIGHT HORIZONS

| | | |
|---|---|---|
| NEB 2-01/02-7-30420-R<br>EEOC 32E A1 0780 | **ON AGENDA** | **Age** |
| NEB 2-01/02-7-30421-R<br>EEOC 32E A1 0780 | **NOT ON AGENDA** | **Retaliation** |

### RE: DUCHESNE ACADEMY

| | | |
|---|---|---|
| NEB 2-01/02-7-30418-R<br>EEOC 32E A1 0779 | **ON AGENDA** | **Age** |
| NEB 2-01/02-7-30419-R<br>EEOC 32E A1 0779 | **NOT ON AGENDA** | **Retaliation** |

### RE: CHRIST THE KING CATHOLIC SCHOOL

| | | |
|---|---|---|
| NEB 2-01/02-7-30422-R<br>EEOC 32E A1 0781 | **ON AGENDA** | **Age** |
| NEB 2-01/02-7-30423-R<br>EEOC 32E A1 0781 | **NOT ON AGENDA** | **Retaliation** |

Please find the enclosed documents in response to the January 18, 2002 determination letters sent to me regarding employment discrimination. It is important for the person reading this letter to know that this charge is one of many. These institutions have professional ties to one another and to past charges. On January 18, 2002, I received Nebraska EOC dismissals for three more institutions which were signed on January 18, 2002. I was advised that three cases were to be before the Commission on the date of January 18th, yet six case depositions were decided.

> Again, while I have been treated most respectfully in my visits to the NEOC office in the last three years, I do not believe that the rules and regulations were, or are now, being judiciously implemented. I have court dates for numerous cases, which has been filed in United States District Court for the District of Nebraska.
>
> It has been my experience that the U.S. Equal Employment Opportunity Commission will adopt the findings of the local fair employment practices agency that investigated the charges. This is based on previous charges that have been filed. Will the U.S. Equal Employment Opportunity Commission investigate these cases? Would you please explain the rationale for the Denver decision?
>
> Sincerely,
>
> Barbara Brundo, Ed.D.

*End of Insert (February 7, 2002 letter):*

Added to this letter were a copy of first NEOC charge in addition to Board Agenda and six Commission cases.

As stated, on March 21, 2002, permission to address the matter in court was provided to the PLAINTIFF with a Dismissal and Notice of Rights as cited in the opening of this document. As stated in the above letter prepared for the District Office of the EEOC, there is no investigation in the Denver Office according to Lottie Odessa; NEOC procedures are reviewed.

The PLAINTIFF has an exemplary record of continuing education achieved in response to Catholic Church teaching of stewardship applied to oneself and use of God-given talents. If there is no value for the expertise of the more highly educated (professionally) candidate, if there is no cognizance of extensive experience in a wide variety of educational environments, if there is no recognition that **Nebraska law mandates merit hiring** there will be a negative effect on the children, infants and preschoolers, in our child care settings and school. *See NFEA Section*

*48:1101. Purpose. It is the policy of this state to foster the employment of all employable persons in the state on the basis of merit regardless of their race, color, religion, sex, disability,[marital status], or national origin.* The degrees of competence of the position candidates have to be measured and/or evaluated.

But far greater is the human error of punishing one person over and over and over for no wrongdoing. Plaintiff UNINTENTIONALLY embarrassed others by asking to do things correctly, INCLUDING THE STAFF AT MERCY CARE CENTER, which is owned and operated by the Sisters of Mercy, who also are part of OMAHA 2000 at College of St. Mary's. The children of student of the College of St. Mary's use the child care center thus there is affiliation with the Sisters of Mercy. The Sisters of Mercy are also serving as administrators at St. Joan of Arc/ St. Gerald Middle School, another institution in question. BRIGHT HORIZONS in a national organization at demonstrated in the addendum (exhibits 15 through 22). Who is it in that organization that trains the staff for hiring in the local setting? PLAINTIFF cannot understand how anyone can put themselves before the children and parents of our schools and childcare centers and ask them to obey rules of the classroom, schoolyard, sports arena, etc. and then fail to honor the rules in the adult game of life. *"What you are rings so loudly in my ears, I cannot hear what you are saying."* (Emerson)

PLAINTIFF has spent years documenting the facts for this pleading. The most PROFOUND fact is the summary of rejections that the PLAINTIFF has experienced in the local Archdiocese and community at large. This is incomprehensible. Since the PLAINTFF did not know the two people involved in this setting this rejection is of great concern. PLAINTIFF did

know the family name of one Omaha 2000/Bright Horizns employee. The dates of hiring and her termination for Alison Peck, whose parents own First National Bank, Columbus are unknown. PLAINTIFF knows professionally the President of the College of St. Mary's, Sr. Marianne Steven. Sr. Marianne Stevens (who has an earned doctorate) was hired by the PLAINTIFF as a religious education consultant for Sadlier Publishing house around 1987. PLAINTIFF recalls that Sister Marianne Stevens indicated surprise at the amount of charity that Christ the King as a conservative parish performed.

Also as stated in an NEOC letter PLAINTIFF took a group of eighth graders and their parents to Washington DC; the group included Kathy Coffey Royce and her daughter. Kathy Royce works for Blue Cross/Blue Shield and her sister is a Mercy nun and Complainant believes head of Mercy Care Center, as the picture of (Sr.) Carolyn Coffey is in the entrance of the facility. Dr. Royce husband of Kathy Coffey Royce was the chairman of the computer committee and then Board member at Christ the King Catholic School when the Complainant was principal. The computer acquisition issue was major. <u>Complainant had a generous grant-in-kind from Apple Computer Company</u> and requested permission form the Board of Education to accept it. The Board of Education denied that request and placed IBM computers in the facility with a $100,000 price tag. Dr. Stephen Coffey was Board President at that time.

Further the local early childhood association includes the same persons who were involved in the hiring incident of October 3-6, 2000. Tammy Engebretson, Erin Salton are on the Board of Directors as is Ellen Freeman-Wakefield the Director of First National Child Development Center. Ericka Pounds (granddaughter's caregiver at Omaha 2000/Bright Horizons)

and Cynthia Strum, former teacher at Christ the King Catholic School also represent the education association's (OAEYC) leadership. PLAINTIFF did work as a peer with Cynthia Sturm at Christ the King School. PLAINTIFF was a presenter at Kaleidoscope Conference in April 2000. Papers related to that presentation are part of the exhibits.

The authority that failed to speak in my behalf OR who spoke against me has violated the law in a very serious manner. <u>Employment Related Defamation</u>: It is communicated to someone other than the subject; it is false and to tends to harm the subject's reputation or lower him/her in the estimation of the community. (Adapted from presentation given by Mary Kay Frank, ESQ. Law Day for the Clergy, March 8, 1994.)

**III.    Remedy** The Plaintiff seeks every fair and just remedies that exists for the above behavior under Nebraska Fair Employment Practice Act and Federal law. This unlawful activity of denying employment to the Plaintiff for unjust reasons must be stopped. No method of application, Nebraska Department of Education complaints, NEOC proceeding or actually pleading with hiring persons has helped the Plaintiff. Can a professional reputation be restored? As the Nebraska Equal Opportunity Commission states in a reasonable cause determination "make whole again."

The law needs to be administered and people need to be educated regarding **Compensation for Damage to Professional Reputation:** (Punitive damages according to 1991 Civil Right Act (...if defendant acted "with malice or reckless indifference."..."the burden of showing good faith is on the employer.") *Lawyers Weekly USA* /June 28, 1999 / Page 19.

**Compensation for Lost of Salary/Benefits with Interest**

**Compensation for Emotional Distress**

**Monetary awards determined and disbursed according to ability to pay**

Plaintiff seeks every just and lawful compensation such as attorney fees, court costs, copying and related clerical costs, telephone costs, front, pay, back pay, emotional and punitive damages related to this conduct which Plaintiff believes is highly unprofessional.

**IV. Lawyer Representation** Plaintiff will seek attorney representation for review of the settlement or court representation.

Signed this 21 day of June, 2002.

_Barbara Brundo_

PLAINTIFF REQUESTS TRIAL IN OMAHA

DECLARATION MADE UNDER PENALTY OF PERJURY

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 21, 2002

_Barbara Brundo_
Signature of plaintiff